JERRY McCUE, Respondent, *v.* THE NATIONAL STARCH MANU-FACTURING COMPANY, Appellant.

Where a master does not require his servant to repair machinery used by the latter, when out of order, but has a machinist employed to perform that duty, to whom the servant is required to report in case the machinery becomes out of order, it is not required of the master to instruct the servant as to the manner of repairing or the danger of attempting it, and in case the servant does attempt it without orders and is injured, the master is not liable.

(Argued March 9, 1894; decided April 10, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 12, 1892, which affirmed a judgment in favor

of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for personal injuries received by plaintiff while in the defendant's employ.

The facts, so far as material, are stated in the opinion.

*E. Countryman* for appellant. The court erred in refusing to non-suit the plaintiff. There is no view of the evidence on which a recovery can properly be sustained. (*Cahill* v. *Hilton*, 106 N. Y. 512; *Crown* v. *Orr*, 140 id. 153, 450, 451; *Stringham* v. *Hilton*, 111 id. 188, 195, 196; *Burke* v. *Witherbe*, 98 id. 562, 565, 566, 567; *Hickey* v. *Taaffe*, 105 id. 26, 36; *Kaye Case*, 51 Hun, 520, 522; *Thorne Case*, 11 N. Y. S. R. 845; *Smith* v. *Martin*, 39 id. 126; *Buckley Case*, 113 N. Y. 540, 545; *Ogley* v. *Mills*, 139 id. 458.) The non-suit should also have been granted on the ground that there was no proof of the absence of contributory negligence. On the contrary, such negligence was proven affirmatively. (*Cahill* v. *Hilton*, 106 N. Y. 512; *Crown* v. *Orr*, 140 id. 451.)

*Benjamin W. Downing* for respondent. The principle of law is well defined that a duty devolves upon a master before putting a common laborer in charge of dangerous machinery, with which he is not acquainted, to instruct and qualify him for such duty, and failing so to do, the master is guilty of negligence. (*Brennan* v. *Gordon*, 118 N. Y. 489, 494; *Crown* v. *Orr*, 140 id. 450–453.) The negligence of the foreman to properly instruct the plaintiff in the danger of his attempting to fix the machinery was negligence on the part of the defendant master. (*Mann* v. *D. & H. C. Co.*, 91 N. Y. 495–500; *Loughton* v. *State*, 105 id. 159, 162, 163; *Brennan* v. *Gordon*, 118 id. 489–494.) In the absence of express instruction from defendant of the danger of fixing the machinery, and in view of the special instruction to him to "fix the machinery when out of gear," it was not negligence on the part of plaintiff to attempt to fix the key in the wheel. (*Connolly* v. *Poillon*, 41 N. Y. 619.) The co-operation of the negligence of the

defendant and of the foreman in the production of the injury by failing to warn the plaintiff of the danger in fixing the machinery does not excuse the defendant from liability therefor. (*Stringham* v. *Stewart*, 100 N. Y. 516–526; *Fuller* v. *Jewett*, 80 id. 46, 52; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 209; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546.) The denials of the motions for non-suit and to direct a verdict for defendant were proper. (*Thurber* v. *H. B., M. & F. R. R. Co.*, 60 N. Y. 326.) This court cannot interfere because of the amount of damages. (*Kiff* v. *Youmans*, 86 N. Y. 324–327.)

O'Brien, J. The plaintiff, while in the employment of the defendant, in the month of August, 1891, sustained a very serious injury to his right arm and hand for which he recovered the judgment appealed from. There is little if any dispute as to the facts, and none whatever as to the manner in which the accident occurred. The defendant's business was manufacturing corn starch. The plaintiff had been employed in the factory as a day laborer for about three years prior to the injury in the feed department. In the room where the plaintiff was so employed there are a number of cisterns standing upon the floor in double rows, each cistern being six feet high and about sixteen feet in diameter, and each row of cisterns being separated from the other by a trough or gutter connecting with the cisterns on either side; and this gutter is covered with planks, forming a platform about two feet high from the floor, upon which the workmen stand to pass to and fro in the discharge of their duties. There are several plug holes on the side of each cistern, which are used to draw off the water, and another one in the bottom operated by a crank at the top to let out the feed; and also one or two steps on the outside to enable the workmen to ascend high enough to remove and replace the plugs, as well as move the lever which sets the stirrer in motion. Over each row of cisterns there is a line of shafting supported by a framework of beams about two feet below the ceiling. This shafting pierces the vertical

cog wheel located over each cistern, which is fastened to the main shaft by means of a key or pin placed in a groove, and this cog wheel may be brought into connection with a similar horizontal wheel attached to the upper end or top of the stirrer, which, when in operation, turns the stirrer used to stir up the feed in the cistern and to assist in expelling it therefrom through the plug holes. These cog wheels may, by means of a lever, be readily thrown in or out of gear for the purpose of starting or stopping the stirrer, and the whole line of shafting over the entire row of cisterns may also be disconnected from the power by which the machinery is run, by means of a clutch provided for that purpose.

The plaintiff's duties as a workman consisted in managing these plugs, by removing and replacing them from time to time, and operating the lever over the cisterns or vats which placed the horizontal cog wheel in or out of gear with the vertical wheel. This lever could be moved by standing on the upper step outside of the cistern. Sometimes the driving chain or belt which passes over the main power wheel in another part of the building, and connects it with the other machinery, would come off, thus stopping the machinery. The plaintiff and other employees sometimes assisted in replacing this chain when the machinery was not in motion. With this exception the plaintiff's connection with the care of the machinery or its use or management, seems to have been confined to moving the lever which placed the stirrer and the vertical wheel in and out of gear.

On the 31st day of August, 1891, while the machinery was in motion and the plaintiff was performing his usual duties, the pin or key which locked one of the vertical cog wheels over a cistern to the main shaft, dropped out, thus loosening the wheel so that it did not move with the shaft and did not turn the wheel operating the stirrer, as it should have done. The plaintiff undertook to replace the key, and thus re-lock the wheel to the shaft, with a spike, and with this view, crawled up and over the framework which supported the shaft and wheel, and while the shaft was in motion inserted the spike.

with one hand while clinging with the other hand to the beam on which he lay.   Having with some difficulty inserted the spike, the main cog wheel immediately moved with the shaft and caught his right arm, causing the injury.

There was a machine shop in the building fifty or seventy-five feet distant from where the plaintiff was, in which the defendant kept several machinists employed, whose duty it was to oil and keep the machinery in order.   The plaintiff testified in substance that when employed he was directed to adjust the machinery when out of gear, and that it was part of his duties to fix his own machinery.   This doubtless referred to his duty to throw the horizontal wheel out of gear when necessary to stop the stirrer, and no injury resulted from that operation.   The injury resulted from an attempt by the plaintiff to lock the vertical wheel to the main shaft.   The testimony on the part of the defendant, from several witnesses, was to the effect that the plaintiff was not required to repair or adjust machinery when out of order ; that he had nothing to do with it but report the fact to the office of the machinist in the same building, whose duty it was to put it in order or make the necessary repairs.   The complaint contained no distinct general allegation of negligence on the part of the defendant, but it did contain a specific charge of neglect in not furnishing the plaintiff with a safe place to work and suitable and safe machinery to operate.   At the close of the evidence the court ruled that there was no case of negligence in omitting to furnish a safe place to work or in omitting to furnish safe, proper and adequate machinery shown, and refused to submit any such question to the jury, but did submit the case to the jury upon another theory which was not suggested in the complaint.   The learned judge charged the jury that the plaintiff's case must rest upon the omission by the defendant to warn the plaintiff, who was a laborer not skilled in the use of machinery, of the danger incident to its use and the neglect to instruct him as to its use and as to the manner of adjusting it when out of order. The recovery was, therefore, had upon a ground not disclosed

by the complaint. But as no specific objection was made upon this ground, it becomes necessary to examine the case upon the theory under which it was sent to the jury. As the defendant did not require day laborers to repair machinery out of order, but had a machinist in the factory to perform that duty, it was not necessary to instruct them as to the manner of repairing or adjusting it when out of order. The master had no reason to anticipate that when the wheel became unlocked from the shaft the plaintiff, while the machinery was in motion, would attempt to lock it. The sole cause of the accident was the attempt of the plaintiff to do that while the shaft was revolving. His duty did not require him to run such a risk. He received no order or direction from any one to attempt an operation involving so much danger. It was a voluntary act on his part not at all necessary to the performance of the work which he was employed to do. When he discovered that the vertical wheel was loose upon the shaft and undertook to fasten it, without stopping the machinery, he took upon himself the risks and dangers of the operation. He thereby exposed himself to injury without cause, as common prudence required that he should report the fact to the machinist, who was in the same building, and who was charged by the master with the duty of doing what the plaintiff thus unnecessarily attempted to do. The operation which the plaintiff attempted to perform was not dangerous in itself, and was rendered so only by the fact that the machinery was not stopped while the pin which fastened the wheel to the shaft was being adjusted. The plaintiff alone was responsible for the result, as he was engaged in an act the danger of which was obvious, and which was outside of the duties which the master required him to perform. (*Crown* v. *Orr*, 140 N. Y. 450 ; *Cahill* v. *Hilton*, 106 id. 512.) The evidence did not establish any personal neglect or fault on the part of the master. He was not required to give instructions as to the necessity in such cases, or the manner of stopping the movement of the shaft, as he could not reasonably anticipate that the plaintiff would

attempt to do what he did. Moreover, the plaintiff had three years' experience in the performance of his duties. The machinery, so far as he had anything to do with it, was of the simplest kind. Whatever dangers were involved in the act which he attempted to perform were obvious, and as well known to him as to the master. He could not voluntarily do an act which he was not required to do and charge the master with responsibility for the resulting injury. The accident was not caused by the plaintiff's ignorance of the machinery. He had seen its operation for three years. He knew what was out of order and how to correct the difficulty, and his only mistake was in assuming that he could safely adjust the wheel to the shaft without cutting off the power. The plaintiff was injured, not because he was ignorant or needed instructions, but because he was not cautious, a fault which more frequently proceeds from confidence and familiarity with the use of machinery than from ignorance. The master is always at fault when such an injury results from unsuitable or defective machinery which he could have repaired or replaced by the exercise of reasonable care, but that question was not submitted to the jury. The verdict is based upon the principle that the master failed to perform his duty to the plaintiff in not warning him against the possibility of such an accident or instructing him how to avoid it. This imposed upon the defendant a measure of responsibility not warranted by the rules of law. The judgment must, therefore, be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.