## NATIONAL FIRE PROOFING CO. v. ANDREWS.

(Circuit Court of Appeals, Sixth Circuit. December 17, 1907.)

### No. 1,687.

1. MASTER AND SERVANT—INJURIES TO SERVANT — DEFECTIVE MACHINERY — KNOWLEDGE.

Rev. St. Ohio 1906, § 4364–89c, makes it the duty of factory owners to countersink or cut off bolt heads and set screws on revolving machinery which might otherwise project beyond the surface of the revolving part, and Act April, 1904 (97 Ohio Laws, p. 547), provides that knowledge by an employé that the machinery of his employer is not guarded as required by statute shall not be a defense, but that a continuance in service with such knowledge shall prevent a larger recovery in case of death than $5,000 or $3,000 when there is injury without death. *Held,* that where an employé

was injured by a projecting set screw on a shaft which had not been countersunk, but there was no evidence that he knew the screw projected, the court properly refused to charge that if they found plaintiff knew of the projecting set screw they could not return a verdict for more than $3,000.

2. WRIT OF ERROR—INSTRUCTIONS—PREJUDICE.

Where the court charged that if plaintiff knew of a projecting set screw from a shaft by which he was injured while in defendant's employ he could not recover at all, defendants could not object to the refusal of an instruction that if plaintiff had such knowledge he could not recover more than $3,000.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4056–4058.]

3. SAME—DEFECTIVE MACHINERY—NEGLIGENCE OF MASTER — DELEGATION OF DUTY.

The duty of a master to prevent danger from projecting set screws or bolts on a revolving shaft by countersinking or cutting off the bolt heads as required by Rev. St. Ohio 1906, § 4364–89c, is one which the master cannot delegate to another servant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 392–396.]

4. SAME—ASSUMED RISK—SCOPE OF EMPLOYMENT.

If an employé without the direction of the employer engage in a dangerous work outside the scope of his employment and is injured, he cannot recover therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 654.]

5. SAME—FELLOW SERVANTS.

A superior servant in a factory designated as "inside foreman," with authority to direct plaintiff to leave his accustomed work to assist in replacing a belt, the entire operations of the factory being under the control of the superintendent, was plaintiff's fellow servant in respect to any question of the liability of the master for the negligent injury of one by the other.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 449–455.]

6. SAME—VOLUNTEER.

Where defendant's inside foreman, having control over plaintiff, directed him to suspend his employment, which was not dangerous, and assist in replacing a belt, in doing which plaintiff was injured by the negligence of the master in failing to remove a projecting set screw from a revolving shaft, as required by Rev. St. Ohio 1906, § 4364–89c, plaintiff in obeying the command of his superior did not become a mere volunteer, so as to preclude his recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 655–658.]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

N. B. Billingsley, for plaintiff in error.
J. W. Craine, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This was an action for the negligent injury of the plaintiff, Roy Andrews, a boy of 16, while engaged in the service of the defendant company. Andrews had worked, in all, some six or eight months, first on the "dry floor," a place where he had nothing to do with machinery, and then as a pugger, where he had to

feed a claymill in which clay was mixed with water and reduced by revolving knives upon a shaft which ran through the mill. A belt upon a pulley on the main shafting of the factory came off. The petition alleges that the plaintiff was directed by one Derringer, his immediate superior and the inside foreman under the general superintendent, to quit his regular work and assist one Gordon in replacing this belt. While engaged at this he sustained the injury for which he sued. There was a verdict and judgment for $5,000.

The negligence upon which the case turned consisted in this, that a bolt or set screw upon the shafting, and very near the pulley upon which the belt was to be replaced, projected an inch or more, and that plaintiff's clothing was caught on said set screw while the shaft was rapidly revolving, whereby he was frightfully hurt. Knowledge of this set screw by the defendant was averred. The plaintiff also charged that he was young and inexperienced with such machinery; that it was not his business to handle this belting; that he knew nothing about the projecting set screw or the dangers incident to such a thing, and that his youth and inexperience was well known to defendant. By statute, in Ohio, it is made the duty of owners and operators of shops and factories, etc., to guard against injury to persons who may come in contact with machinery by countersinking or cutting off bolt heads and set screws upon wheels, shafting, and other revolving machinery, which might otherwise project beyond the surface of a revolving part. Rev. St. Ohio 1906, §§ 4364–89c. By section 4364–89d, violation of this provision is made a punishable misdemeanor. By the Ohio act of April, 1904, 97 Ohio Laws, p. 547, it is in substance provided that knowledge by an employé that the machinery of his employer is not guarded, as required by the statute, shall not be a defense, but that a continuance in service, with knowledge, shall operate to prevent a larger recovery in case of death than $5,000, or $3,000 when there is injury without death.

Only two exceptions to the charge or refusal to charge were reserved. The first is that it was error to refuse a peremptory instruction for the defendant, and the second is that the court should have instructed the jury that they could not return a verdict for more than $3,000, if they found that the plaintiff knew of the projecting set screw. This latter may be disposed of at once. First, there was not the slightest evidence that the plaintiff had continued in service after knowledge that this set screw did project contrary to the statute. Second, the court told the jury that, if they found that Andrews knew there was a projecting set screw there, he would have no right to recover at all. This was more than defendants asked for, and of this it cannot complain. The verdict of the jury, under such a charge, conclusively establishes, for the purpose of this assignment of error, that Andrews did not continue in the service of defendant with knowledge that the statute had, in this particular, been disregarded.

To return to the first exception mentioned, there was evidence enough to carry the plaintiff's case to the jury upon every material issue, unless it be, as now contended, that Derringer, Andrews' immediate superior, was not a vice principal when he temporarily took Andrews from his regular place and job to assist in the dangerous job

of replacing a belt upon its pulley, and that Andrews was therefore a volunteer and the company not liable. The plaintiff averred that Andrews was placed under the direction and control of Derringer, who was what was called "inside foreman," the whole operations of the factory being under the control of a superintendent. The answer admits that the defendant was a minor, "employed as a pugger or operator of a machine for mixing clay, and was placed under the direction and control of George Derringer, one of defendant's foremen." There was a general denial of all the other material averments of the petition. One of these averments was that Andrews came to his injury by obeying the direction of Derringer to assist about replacing the belt. There was a conflict in the evidence as to whether Derringer had or had not directed Andrews to engage in this dangerous job, and the case upon that point went to the jury under an instruction that if the plaintiff voluntarily went upon this shaft staging "of his own motion, and not by direction of Derringer, he was a volunteer," and could not recover. The court further instructed the jury that, if he was ordered to go upon this staging and assist in the replacement of this belt which had come off of its pulley, and was not himself guilty of any negligence, "considering all of the elements and circumstances to which reference had been made, his age, his experience, his knowledge or want of knowledge, etc. * * *," he would be entitled to recover. There being no request for any other or further charge, nor exceptions to the charge as delivered other than the request for an instructed verdict for the defendant, the case went to the jury upon whether Andrews was a volunteer engaging in a work which he was not employed to do, notwithstanding the fact that he was directed to do the work in which he received the injury by his immediate superior, Derringer. Derringer was the fellow servant of Andrews, it is said, and the master not responsible for an injury which resulted from his wrongdoing. But the negligence which is a sufficient foundation of this action was the master's negligence in not guarding his machinery as required by the Ohio statute. It is not, therefore, a question of the injury of Andrews through any personal negligence of Derringer, as distinguished from the negligence of the employer in a duty which he could not in law delegate. In addition to this, there was the question whether the act of Derringer in directing this boy to assist in so dangerous a job was not in itself a wrongful act, knowing as he did, his inexperience and his youth. For just such conduct the master was held liable by the Supreme Court in Railroad Co. v. Fort, 17 Wall. 553, 21 L. Ed. 739, and by this court in Felton v. Girardy, 104 Fed. 127, 130, 43 C. C. A. 439. But, passing this, it is sufficient that the statutory requirement referred to was a nondelegable duty, and the employer liable if the defendant did not assume the risk or contribute to his own injury, provided only he was not a volunteer. But it is said, and rightly, that the settled law is that if an employé, without the direction of the employer, engage in a dangerous work outside of the work he was employed to do and sustains an injury, he has no right to complain and cannot recover against the master. This is a well-settled rule of law consistently laid down by this court in Baltimore & Ohio Railroad Co. v. Doty, 133 Fed. 866, 871, 67 C. C. A. 38, and in line with many cases, a few

of which are Knox v. Pioneer Coal Co., 90 Tenn. 546, 18 S. W. 255, Mellor v. Merchants' Mfg. Co., 150 Mass. 362, 23 N. E. 100, 5 L. R. A. 792, Cleveland, A. & C. Ry. v. Workman, 66 Ohio St. 509, 64 N. E. 582, 90 Am. St. Rep. 602, and McCue v. Nat. Starch Mfg. Co., 142 N. Y. 106, 36 N. E. 809. Neither is it to be for a minute disputed that Derringer and Andrews were fellow servants in respect to any question of the liability of the common employer for the negligent injury of one by the other. Louisville & Nashville Railroad Co. v. Stuber, 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696, and Kinnear Mfg. Co. v. Carlisle, 152 Fed. 933, 82 C. C. A. 81, are both cases decided by, this court, following and affirming Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, Railroad Co. v. Conroy, 175 U. S. 323, 328, 20 Sup. Ct. 85, 44 L. Ed. 181, and Railroad Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006.

But Derringer had authority and control over Andrews, and in the exercise of that authority and within the general scope of his powers temporarily took Andrews from his usual place and job to which he had been assigned and directed him to assist on other and more dangerous work for the common master. It cannot be said if Andrews obeyed his immediate superior, and the order was not so unwarrantable as to justify an out and out refusal because of its apparent great peril, that he was a volunteer. The question is not one of liability of the master for an injury of one servant due to the negligence of another. The nonliability of the master in such cases is because it is an implied term of the contract of hiring that the servant will assume the usual hazards of the employment, one of which is the danger from the negligence of fellow servants. Within that rule of law the fact that Derringer had control over Andrews would not affect the matter. But here the question is merely one of principal and agent, and if Derringer, as the agent of the defendant corporation, had control over Andrews, he would not be exceeding the general scope of his power if he should temporarily require of Andrews such a service as that here involved, and Andrews in obeying would not be a volunteer, but entitled to claim that such a temporary enlargement of his work did not put him outside of the pale of an employé. Not one single authority has been cited to support the contention that Derringer could not bind the master in directing Andrews to render the service he did because he was a fellow servant within the rule of negligence cases. Upon the other hand, there are many cases in which the order of such an immediate superior as Derringer has been treated as the order of the master, although in few of them has there been any discussion of the question. Railroad v. Fort, 17 Wall, 553, 559, 21 L. Ed. 739, was an action by a minor who, by direction of Collett, who was in charge of the machine shop, was taken from his regular employment and directed to assist in the adjustment of a belt upon a shafting. In doing so he was hurt. The court held that it was a wrongful act upon the part of Collett, in view of the plaintiff's youth and inexperience, to put him to do a thing so dangerous. But, said the court:

"For the consequences of this hasty action the company are liable, either upon the maxim of respondeat superior, or upon the obligations arising out of

the contract of service. The order of Collett was their order. They cannot escape responsibility on the plea that he should not have given it. Having intrusted to him the care and management of the machinery, and in so doing made it his rightful duty to adjust it when displaced, and having placed the boy under him with directions to obey him, they must pay the penalty for the tortious act he committed in the course of the employment. If they are not the insurers of the lives and limbs of their employés, they do impliedly engage that they will not expose them to the hazard of losing their lives, or suffering great bodily harm, when it is neither reasonable nor necessary to do so. The very able judge who tried the case instructed the jury on the point at issue in conformity with these views, and we see no error in the record."

This case is explained as not inconsistent with the rule in respect to nonliability for the negligent injury of one servant by another. Baltimore & Ohio Railroad Co. v. Baugh, 149 U. S. 368, 388, 13 Sup. Ct. 914, 37 L. Ed. 772. In Patnode v. Warren Cotton Mills, 157 Mass. 283, 291, 32 N. E. 161, 34 Am. St. Rep. 275, the company was held liable for an injury sustained by a minor who assisted in a repair outside of his regular occupation by direction of an "overseer of a room." The court said:

"If the plaintiff complied with the order, the defendant would stand to him in relation of a master, although McKeon might have acted negligently in calling upon him, and might not have made a wise selection or have done what the overseer or defendant intended. The usual doctrines of agency would govern the case."

In Reed v. Stockmeyer, 74 Fed. 186, 191, 192, 20 C. C. A. 381, 386, the Circuit Court of Appeals for the Eighth Circuit, when the same question arose, said:

"Robert Reed, the son of the owner, was superintendent of his father's quarries. He gave general directions with respect to the management of them to the foreman, Drehoble, from whom the workmen received their orders, he working with them, and personally assisting, daily, in their labors; and we assume —although there is some conflict in the testimony—that Drehoble employed and discharged the men. It follows, therefore, that, in the hiring of the men and in the direction to Stockmeyer to engage in work without the scope of his original employment, Drehoble, so far as that duty was concerned, was the representative of the master, and a vice principal, and for whatever wrong, if any, he did in that capacity, the master was liable."

In Felton v. Girardy, 104 Fed. 127, 130, 43 C. C. A. 439, we assumed without discussion that the order of the immediate superior putting the employé to a new and dangerous work, without instructions, the ignorance of the servant being known, was the negligence of the master. See, also, the following where the question was properly present, and either liability assumed without statement or decided in short terms as plain law. Gilmore v. Railroad Co. (C. C.) 18 Fed. 866; Richardson v. Swift & Co., 96 Fed. 699, 37 C. C. A. 557; O'Connor v. Atchison, etc., Ry. Co., 137 Fed. 503, 70 C. C. A. 87; Fisk v. Cen. Pacific Railroad Co., 72 Cal. 38, 13 Pac. 144, 1 Am. St. Rep. 22; Southern Railway Co. v. Guyton, 122 Ala. 231, 25 South. 34; Broderick v. Union Depot Co., 56 Mich. 261, 22 N. W. 802, 56 Am. Rep. 382.

Judgment affirmed.