STERLING PAPER CO. v. HAMEL.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1913.)

No. 2,330.

1. MASTER AND SERVANT (§ 121*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DANGEROUS MACHINERY—VIOLATION OF STATUTORY REQUIREMENTS—"TAKE ORDINARY CARE AND MAKE SUCH SUITABLE PROVISIONS."

Act Ohio March 20, 1900 (94 Ohio Laws, p. 42; Bates' Ann. St. § 4364—89c), which requires factory owners to "'take ordinary care and make such suitable provisions' as to prevent injury to persons who may come in contact with any such machinery or any part thereof," and in terms provides that such ordinary care and such suitable provisions shall include the boxing of all shafting when operating horizontally near floors, and the covering, cutting off, or countersinking of set-screws, imposes a nondelegable duty, and its violation constitutes negligence per se.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

2. MASTER AND SERVANT (§ 121*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DANGEROUS MACHINERY—NEGLIGENT FAILURE TO PROTECT.

The failure of a paper company to cover a projecting set-screw on a revolving shaft near the floor in its mill, in the most direct way between the place where an employé worked and a steam valve necessary to be

operated in regulating the supply of steam to his machine, *held* a violation of such statute, which constituted negligence as matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

3. MASTER AND SERVANT (§ 297*)—ACTION FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

Where the question whether an employé knew of the existence of a set-screw by which he was injured was submitted to the jury, a verdict in his favor is conclusive that he did not have such knowledge and voluntarily assume the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. § 297.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. MASTER AND SERVANT (§ 282*)—ACTION FOR INJURY TO SERVANT—STATUTORY LIMITATION OF RECOVERY.

Act Ohio May 3, 1904 (97 Ohio Laws, p. 547; Bates' Ann. St. § 4238o—1), which limits the recovery by an employé injured by dangerous machinery to $3,000, where he remained in the service with knowledge of the employer's omission to protect such machinery as required by statute, is applicable only to cases where the employé had such knowledge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 997–999; Dec. Dig. § 282.*]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Action at law by Louis Hamel against the Sterling Paper Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Gottschall & Turner, of Dayton, Ohio, Kittredge, Wilby & Stimson and Joseph Wilby, all of Cincinnati, Ohio, and O. M. Gottschall, of Dayton, Ohio, for plaintiff in error.

Allen Andrews, Woodruff & Shelhorn, and Andrews, Harlan & Andrews, all of Hamilton, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was a suit for personal injuries, brought in the common pleas of Butler county, Ohio, and on the ground of diversity of citizenship removed to the court below. Hamel was severely injured while in the employ of the Paper Company as "back tender" of one of the machines in its factory. He received his injuries on the night of November 26, 1909. For the purpose of turning off the steam, Hamel attempted to reach a steam valve by stepping over a calender shaft revolving at a rate of 60 or 70 revolutions a minute, when the right leg of his trousers was caught by an exposed set-screw, which drew him astride the shaft. The company admitted by its answer that a set-screw was maintained in a coupling between the shaft and the calenders of the machine at which Hamel was working, that the set-screw was uncovered, and that it projected beyond the surface of the shafting and coupling. The defenses chiefly relied on in the answer—indeed, the only ones

of importance as to nonliability—were of assumed risk and contributory negligence. The case was tried twice below, the first trial resulting in a verdict for plaintiff of $5,000, which was set aside and a new trial awarded, and the second in a verdict of $6,000; and from the judgment entered thereon the company prosecutes error.

By statute of Ohio (Act March 20, 1900; 94 O. L. 42; 2 Bates' Ann. Stat. [6th Ed.] § 4364—89c) such companies as defendant were required to—

"take ordinary care, and make such suitable provisions as to prevent injury to persons who may come in contact with any such machinery, or any part thereof; and such ordinary care and such suitable provisions shall include the casing or boxing of all shafting when operating horizontally near floors, * * * the covering, cutting off, or countersinking of * * * set-screws, and all parts of * * * shafting, or other revolving machinery, projecting unevenly from and beyond the surface of such revolving parts of such machinery. * * *"

Violation of any of the foregoing provisions is, by the next section of the act, made a fineable offense.

[1] It is not disputed that the set-screw, the exposure of which is admitted by the answer, was the one that caught Hamel's trousers. The court below ruled as matter of law that the company was guilty of negligence. Apart from a question presented by two requests of the company, which will be considered later, it is clear that the statutory duty so imposed upon the owner of a factory is not only specific, but is also of a nondelegable character (National Fireproofing Co. v. Andrews, 158 Fed. 294, 297, 85 C. C. A. 526 [C. C. A. 6th Cir.]); and it is settled in this court that the owner's violation of such a statute constitutes negligence per se (Cincinnati, H. & D. R. Co. v. Van Horne, 69 Fed. 139, 140, 16 C. C. A. 182; Lake Erie & W. Ry. Co. v. Craig, 73 Fed. 642, 643, 19 C. C. A. 631; Naramore v. Cleveland, C., C. & St. L. Ry. Co. [C. C.] 96 Fed. 298, 300; Toledo, St. L. & W. R. Co. v. Kountz, 168 Fed. 832, 838, 94 C. C. A. 244). See, also, Krause v. Morgan, 53 Ohio St. 26, 43, 40 N. E. 886.

[2] However, contention is made, under the two requests before alluded to, that the company did not violate the statute, because, in substance, the set-screw was not so located as to expose an employé to its danger while engaged in the usual and ordinary discharge of his duties, and, consequently, that the master was not bound in the exercise of ordinary care to anticipate such a danger as the one to which Hamel is said to have subjected himself.

It is important here to note the place within which Hamel was working at the time he discovered the necessity to turn off the steam. Accepting for this purpose the distances stated by the company's chief witness in that behalf, Hamel was within a space running east and west about 47 inches in length by about 22 inches in width, this space being bounded as follows: On the west by the calender shaft and coupling in question; on the east by the reel shaft; on the north by the calenders and reels, the outside surfaces of which were 36 inches apart, and between which paper was passing from the calenders to the reels; on the south by the calender and reel pulleys, between which were maintained a belt and an idler, the belt traveling

both ways between the pulleys. The steam valve was about 4 feet west of the calendar shaft. Thus the shortest and only direct way from the place within which Hamel was working to the steam valve was over the calender shaft. It is further to be observed that, while there was conflict in the testimony as to the distance between the top of the calender shaft and the floor at the time of the accident (due in part to an alleged change in its height between that time and the trial), yet the difference is between a claim of 18 to 20 inches on the one side and 26 inches on the other. The question of law thus presented is whether the admitted environment justified the company in maintaining the exposed set-screw in the coupling before pointed out. The exact place of the set-screw was in the collar or hub of the coupling; and this, as stated, was in the only direct line between the space where Hamel was at work and the steam valve.

Concededly the regulation of the flow of steam through this steam valve is an important feature in the manufacture of paper, and the consequent necessity of furnishing a safe way between the space mentioned and the valve is obvious. We have seen that "ordinary care," as defined by the statute, requires the master to "make such suitable provisions as to prevent injury to persons who may come in contact with any such machinery, or any part thereof." The statute does more; it in terms requires the master to cover, cut off, or countersink set-screws. Considering the employé's environment and the necessity to operate the valve, we feel bound to hold that the company was as a matter of law chargeable with knowledge that its employés would be likely to "come in contact" with this set-screw. It follows that this was such a violation of the statute as at once to warrant the instruction that the company was guilty of negligence and a denial of the two requests mentioned.

[3] It is next insisted that Hamel assumed the risk of the danger attending the exposure of the set-screw. This subject has been repeatedly considered by this court, and also quite recently; and we are satisfied that this defense rightly failed. Hamel began work at this place as a "back tender" on the evening of the very night on which he received his injuries. True, he had worked at this place in that capacity some two years before. He testified that he had no knowledge of the existence of the set-screw, either on the night of the injury or during his earlier employment. While there is conflict as to whether he was chargeable with knowledge of its presence, the jury, as stated, found in his favor; and the question of knowledge is concluded by such a verdict. National Fireproofing Co. v. Andrews, 158 Fed. 294, 296, 85 C. C. A. 526 (C. C. A. 6th Cir.). We are asked to reconsider the decision of this court in Naramore v. Cleveland, C., C. & St. L. Ry. Co., supra; but neither the decision nor the well-known controversy that grew out of it has any relevancy to this feature of the present case. The court declared in that case that upon common-law principles the plaintiff would have been held to have assumed the risk of the danger there involved. This was upon the theory that, despite his denial, he was, under the evidence, chargeable with knowledge of the danger. The verdict of the jury was

against him, and the situation therefore was the exact reverse to the one in the instant case. It is not important here whether assumption of risk is a term, express or implied, of the contract of employment, or is based solely upon the maxim "Volenti non fit injuria." Upon either theory of the doctrine it is enough to say of the present case that the essential quality of consent on the part of Hamel was lacking. Smith v. Baker & Sons [1891] A. C. 325, 336, 337. It would be to deny the force of the verdict, to hold that Hamel either knew or was chargeable with knowledge of the danger and voluntarily exposed himself to it; indeed, the absence of conscious assumption is complete, and these features of the doctrine of assumption of risk are, of course, distinct from the principles governing the rule of contributory negligence. Thomas v. Quartermaine, 18 Q. B. D. (Court of Appeal) 685, 696, 697; Wheeler v. Oak Harbor Head-Lining & Hoop Co., 126 Fed. 348, 351, 61 C. C. A. 250 (C. C. A. 6th Cir.); also decisions as to assumption of risk cited in Yazoo & Miss. Val. Ry. Co. v. Wright, 207 Fed. 281, decided by this court May 6, 1913; Southern Ry. Co. v. Gadd, 207 Fed. 277, decided by this court on the same day.

The assignments of error touching the subject of contributory negligence, as also those concerning Hamel's choice of an unsafe way in the presence of one or more safe ways to reach the steam cock, are answered by the general charge and the verdict; for the charge fairly included the company's requests in these respects and was as favorable as could justly be claimed. All of these requests were necessarily dependent upon Hamel's knowledge, actual or constructive, of the exposed set-screw; and, in view of the charge, prejudicial error cannot be ascribed to the denial of any of them.

[4] It is strongly urged that a recovery in excess of $3,000 in a case like this is forbidden by a statute of Ohio; and several assignments of error are presented on this point. By an act approved May 3, 1904 (97 O. L. 547; section 4238o—1, vol. 2 Bates' Statutes [6th Ed.]), it is provided:

"In any action brought by an employé, * * * against his employer, * * * to recover for personal injuries, when it shall appear that the injury was caused in whole or in part by the negligent omission of such employer to guard or protect his machinery or appliances, * * * in the manner required by any penal statute of the state, * * * the fact that such employé continued in said employment with knowledge of such omission, shall not operate as a defense, and in such action, if the jury find for the plaintiff, it may award such damages not exceeding (where death does not result) * * * the sum of three thousand dollars, as it may find proportioned to the pecuniary damages resulting from said injuries. * * * *"

It is to be observed that the limitation upon amount of recovery as fixed by this statute depends upon whether the employé "continued in said employment with knowledge" of his employer's "omission." Further, the court charged the jury:

"That if you find that the plaintiff had knowledge of the existence of the set-screw and continued in the employment of the defendant with that knowledge, the laws of Ohio limit the amount of recovery to such sum as the jury may award as pecuniary damages; * * * and in any event under the

laws of Ohio, if the plaintiff knew of the existence of the set-screw and continued in the employment, he cannot recover more than $3,000."

This court, speaking through the present Mr. Justice Lurton, in National Fireproofing Co. v. Andrews, supra, 158 Fed. 296, 85 C. C. A. 526, touching a refusal of the court below to instruct the jury that it could not return a verdict for more than $3,000 under this statute if it found that the plaintiff knew of the projecting set-screw, said:

"First. There was not the slightest evidence that the plaintiff had continued in service after knowledge that this set-screw did project contrary to the statute. Second. The court told the jury that, if they found that Andrews knew there was a projecting set-screw there, he would have no right to recover at all. This was more than defendant asked for, and of this it cannot complain. The verdict of the jury, under such a charge, conclusively establishes, for the purpose of this assignment of error, that Andrews did not continue in the service of defendant with knowledge that the statute had, in this particular, been disregarded."

We do not discover any decision of the Supreme Court of Ohio construing this portion of the statute. The cases of Wagon Co. v. Gawronski, 14 Ohio Cir. Ct. R. (N. S.) 449, and Lee v. Standard Tool Co., Id. 540, which were affirmed by the Supreme Court without opinions and are now relied on by the company, do not sustain its contention. In the first case the employé remained at his work with knowledge that the machine was not guarded as required by law, and the recovery was only $2,000; in the second, the Circuit Court said (page 542):

"The amount of recovery in such cases is indeed limited to $3,000 for one having knowledge of the absence of statutory safeguards."

For these reasons we must hold that the decision of our own court in the Andrews Case, supra, where a judgment upon a verdict of $5,000 was affirmed, rules this branch of the present case.

The motions in effect to require plaintiff to state and elect whether recovery was sought under the statute or under the common law, as well as the motions to direct a verdict for the defendant, were without merit; and the assignments must be overruled which complain of certain hypotheses under which the case was submitted to the jury— that is, instructing the jury as to the applicable law according as the jury might find certain specified facts to exist or not, because that course was seemingly necessary, and in principle not unusual. It is not necessary to pass upon the remaining assignments of error. We have attentively considered all of them, and have found no error.

The judgment must therefore be affirmed, with costs.