CINCINNATI, N. O. & T. P. RY. CO. v. HALL.

(Circuit Court of Appeals, Sixth Circuit.   June 15, 1917.)

No. 2888.

1. APPEAL AND ERROR ⬦⟿928(2)—EXCEPTIONS—PRESUMPTIONS.
The court is presumed to have correctly charged the jury, in the absence of exception.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3750.]

2. NEGLIGENCE ⬦⟿101—MASTER AND SERVANT ⬦⟿179, 228(1)—INJURIES TO SERVANT—DEFENSES.
Contributory negligence and the acts of fellow servants are not good defenses to an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1916, §§ 8657–8665]); the former, if existing, affecting only the amount of the recovery.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164; Master and Servant, Cent. Dig. §§ 354–358, 670.]

3. COMMERCE ⬦⟿27(8)—INTERSTATE COMMERCE—PERSONS ENGAGED.
An employé engaged in repairing a bridge used by an interstate carrier on its main line is engaged in interstate commerce.

4. MASTER AND SERVANT ⬦⟿103(1)—INJURIES TO SERVANT—DUTY OF MASTER.
A master owes his servants the nondelegable duty to exercise reasonable care to provide a safe place in which to work, which care may not be relaxed whenever the circumstances demand it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175.]

5. MASTER AND SERVANT ⬦⟿112(1)—INJURIES TO SERVANT—CARE.
A railroad company owes its employés a continuing duty to maintain its roadbed in a reasonably safe condition for work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 212, 213, 218.]

6. MASTER AND SERVANT ⬦⟿205(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.
An employé has the right to act upon the assumption that proper care has been exercised with respect to the place of work and to suitable appliances, and does not assume any negligence of the master in those respects until he becomes aware of it, or is charged with notice of facts showing the master's failure to exercise such care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 547.]

7. MASTER AND SERVANT ⬦⟿112(1)—INJURIES TO SERVANT—NEGLIGENCE OF RAILROAD COMPANY.
A railroad company, whose employés were engaged in making a cut in a fill approaching a new bridge, which cut was to make a place for a wooden bent intended to hold up the track and bridge while the abutment was being removed and other permanent structure built in its place, is guilty of negligence in failing to shore up the fill for the protection of those employés engaged therein, where the fill was so constructed that trains passing over it might and did cause it to cave in and injure employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 212, 213, 218.]

8. APPEAL AND ERROR ⬦⟿999(3)—VERDICT—CONCLUSIVENESS.
The verdict of the jury on questions of fact, as to whether an employé was appropriately warned of the danger of his place of work, is conclusive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3923, 3924.]

**9.** MASTER AND SERVANT ⬤⟶211—INJURIES TO SERVANT—ASSUMPTION OF RISK.

An employé, engaged in digging a cut in a fill approaching a stream over which a new bridge was to be constructed, does not, on the theory that he was creating his own place of work, assume the risk of injury from the caving of the fill where such caving was due to the passage of a train and to the peculiar construction of the fill, of which it did not appear that the employé had knowledge; the case being different from that of the ordinary ditch case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 557.]

In Error to the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by W. E. Hall, administrator of the estate of Rufus Hood, deceased, against the Cincinnati, New Orleans & Texas Pacific Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Preparatory to the substitution of a new bridge for an old one over Soddy creek, in Tennessee, on the main line of plaintiff in error, herein called defendant, the defendant caused a cut to be made in the fill approaching the bridge and immediately next to a stone abutment at the south end of the bridge, 24 feet long, 7½ feet high, 3½ feet wide; those figures measuring a transverse section of the fill at that point. The cut was to make a place for a wooden bent, which, with another on the north side of the abutment, was to hold up the track and bridge while the abutment was removed and other permanent structure built in its place.

Hood, an employé, was, with others, engaged on the cut, which was supervised immediately by a foreman. There was also a foreman of the entire work on the bridge and both approaches, and all the work and men engaged upon it were under the supervision of the defendant's bridge builder, of long experience. When the men were set to work at the cut, a foreman marked off the places where they were to work, showed them how deep to go, and how much to take out.

Beginning one afternoon, the men had cut in on either side about 6 feet and to the bottom. As the work proceeded, the face of the fill was shored up by direction of the supervisor; planks being placed uprightly against the face of the cut braced by crosspieces running from the face of the planks to the face of the abutment. Who did the work of shoring does not appear. The supervisor said it was done "To protect the stringers, we always should in doing that sort of work, that makes it solid down there, so it can be used without danger. * * * We shored it up on account of the soft and loose dirt. It was liable to cave in."

To the end that traffic might not be interrupted, strong stringers were introduced under the ties to hold up the tracks; the ends on one side resting on the abutment and on the other on the roadbed itself, or upon a heavy crosssill, as the jury might determine from conflicting evidence. The supervisor testified, and it is clear, that stringers resting on the fill itself would make the work more dangerous to those working in the cut.

The fill was composed of sand and some clay for about half its height from the bottom; above that some sand and clay, with many round and smooth boulders running in size from large pebbles to 14 inches in diameter. The top of the fill was ballasted with slag of perhaps a foot and a half in thickness, having a tendency to form into masses. The supervisor knew the character of the fill. Whether the ends of the stringers rested on a sill or on the top of the fill, the ties must have been lifted out of their positions in the slag, thus leaving transverse depressions and heavy ridges in the slag. One stringer was under the middle of the track, and the other two at the sides, though how far apart does not certainly appear.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the early afternoon of the second day, the men had cut through from side to side and down from the top about 6 feet, leaving to be removed but about 1½ to 2 feet at the bottom immediately under the track and about 4 feet long on each side and sloping down from the middle outwardly. How far the shoring had been completed does not certainly appear, but there was no shoring under the track at the deepest part of the cut and where it was needed the most. An employé working with Hood (an intelligent witness, so far as one can judge from the record) made the unshored distance 10 feet. The supervisor first said it was 4 feet, and, after making some calculations involving the width of the stringers and the distance between them, calculated the distance to be 6½ feet. The jury were at liberty to find the distance 10 feet. When questioned on the assumption that the distance was 10 feet, the supervisor said: "It would be an unusual and dangerous method to do the work, if there should be as much as 10 or 12 feet left under the track unshored. It is not the usual method to leave so long a space as that unshored." Trains passed over from time to time, the last at one-half to three-quarters of an hour before the accident happened. Hood was at work under the track when the fill caved in. He was thrown against the abutment and fatally injured. Sand and loose earth covered his legs and the lower part of his body, while his chest and head were crushed in by masses of slag, one said to be as large as a flour barrel.

In the débris was found a rotten log or tie about 3½ feet long, which had been imbedded in the sand and boulders about 3 feet from the top of the fill and the same distance from the face of the cut. The material above the log fell. It may be that this piece of decayed wood, disturbed by the jarring of the trains, precipitated the fall of the sand and boulders in which it was, and thus caused the fall of the then overhanging slag. It may be the log had nothing to do with it; but the fall of all the débris was practically simultaneous. There was some testimony tending to show warning to the workmen to look out for cracks and for falling earth; but the burden of the warning was to get out from under when trains were passing, lest blocks, brake beams, etc., might fall. One witness testified the men were told they could see when the earth began to crumble.

If the shoring had been carried under the track, there is no reason to think an accident would have happened. The break in the face of the fill did not go down to the bottom, but only about 3 feet from the top, and it was the opinion of the supervisor that the work Hood was immediately doing did not contribute to the fall. The supervisor left the work on a train about one-half to three-quarters of an hour before the accident. He said the train had not apparently affected the top of the embankment, and he stood at the end to see whether the stringers were sufficient to hold up the roadbed. He made no inspection of the face of the cut, and was unwilling to say that the passing train had nothing to do with the fall. Neither of the foremen had been present for perhaps three-quarters of an hour before the accident.

Hood was 27 years old, industrious, of good habits, and was a "good husband," earning $1.65 a day, which he applied to the support of his family. The action was brought by his administrator under the Employers' Liability Act for the benefit of his widow (23 years of age) and two children (one posthumous), who at the time the action was brought were, respectively, 4 years and 16 months old. The verdict was for plaintiff for $9,750, of which the court required a remittitur of $3,000.

Among other things, the court charged the jury:

"There is, generally speaking, a duty on a man who employs laborers to use reasonable care to make the place in which they are to work safe. He does not insure their safety. He is not responsible for accidents that happen to them unless he fails to take reasonable care for their protection. The care which he must take is such as a reasonably prudent employer would take under the circumstances, having due regard for the safety of his employés. It is the ordinary care of a reasonably prudent man; no more, and no less. The question is to be determined by the jury in the light of all the circumstances.

"Now, ordinarily, where men are laborers, engaged in the work of excavation, considering the changes that take place in the place where they work,

this duty of the master to furnish a safe place to work is held to have no application on the idea that the men themselves are making their place of work and that the conditions of the working place are constantly changing as a result of their own labor, and under such circumstances the master cannot be held, cannot be expected to exercise a constant supervision over the safety of the place where the place is changing from moment to moment as a consequence of their own labor.

"In this particular case, however, there may be another element which enters into the question as to the safety of this working place. This was not an excavation in the nature of an ordinary ditch, but it was an excavation which was being made under a railroad track where trains were run over it from time to time, and the excavation on one side was in the embankment which was a part of the fill on which the line of the railroad rests, and the railroad was from time to time running its trains over this fill on this track, and the danger of the place, the danger incident to the digging which the men were doing, may have been materially increased by the fact that trains were run over this embankment, which tended to loosen the earth and make the place more dangerous than it would have been, if they were at work in an ordinary excavation in another place. And the plaintiff maintains that this doctrine of the nonliability of the master as to making the place safe does not apply, and that he must use reasonable care under this condition to see that the place in which his men were at work was made safe; that is, he must use ordinary care of a reasonably prudent man.

"Now, I charge you that that is the law, and that if you find from the greater weight of this evidence that the condition of this place as to safety depended, not only on the work that the men were doing in digging there, but also depended materially upon the fact that trains were from time to time run over this fill, then there would be a duty on the master; and if the danger of the place was materially increased by the fact that trains were being run over the fill, then the master must use the care of an ordinarily prudent man in reference to making the place safe in view of all those conditions."

The record shows: "To that portion of the charge last quoted above the defendant duly excepted. The remaining portions of the charge were wholly unexcepted to." "The parties agree that the foregoing part of the charge covers the controlling question in the case on the question of liability." The only assigned errors needing notice are those involving the claim that the verdict was excessive and those having to do with the charge of the court as given above.

J. J. Lynch, of Chattanooga, Tenn., for plaintiff in error.
W. B. Miller, of Chattanooga, Tenn., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

HOLLISTER, District Judge (after stating the facts as above). [1, 2] What the learned trial judge said to the jury on the subjects of contributory negligence, assumption of risk, consequences of acts of fellow servants, the alleged failure of defendant to make adequate inspection, and to give proper warning to Hood of the danger of the work, does not appear; but in the absence of exception the judge is presumed to have charged the jury correctly on those subjects.[1] In any event, contributory negligence and acts of fellow servants would

[1] Myers v. Coal Co., 233 U. S. 184, 195, 34 Sup. Ct. 559, 58 L. Ed. 906; Ducktown, etc., Co. v. Fortner, 228 Fed. 191, 142 C. C. A. 547 (C. C. A. 6); Railway Co. v. Mustell, 222 Fed. 879, 881, 138 C. C. A. 305 (C. C. A. 9).

not, under the act under which this suit was brought, be good defenses; the former, if existing, only affecting the amount of recovery.[2]

[3] The interstate character of Hood's service is by the agreement admitted; but, since such admission of matter of law may not be conclusive of the court's duty to inquire into its jurisdiction, it may be said the facts bring the case within the act without any doubt.[3]

[4, 5] Apparently the agreement of the parties eliminates all of those subjects from the case; but the questions of assumption of risk and inspection and warning are so involved in the determination of the responsibility of defendant under the circumstances of the case that it will be assumed to be necessary to give some consideration to these subjects as reflecting upon the broader and the ultimate question immediately involved in the charge of the existence of a duty by defendant to exercise reasonable care to provide for its employés a safe place in which to work. That there is ordinarily such a duty, primary and nondelegable, is established,[4] and the care may not be relaxed, for its exercise is a continuing duty whenever the circumstances demand it.[5] Such circumstances include properly constructed roadbed, structures, and track used in the operation of a railroad.[6]

[6] The Supreme Court have held a railroad company liable for the death of its locomotive engineer, whose engine was thrown from the track because of an accumulation of sand and gravel deposited thereon in a curve, and for the death of a train hand whose duty called him to the top of a high freight car, from which he was knocked by an iron spout projecting from a water tank.[7] In each of these cases the employé, of course, assumed the risks attending his hazardous employment as far as they involved defects incident thereto, but did not assume risks caused by his employer's negligence. The Supreme Court says:

"The master is not to be held as guaranteeing or warranting absolute safety under all circumstances, but it is bound to exercise the care which the exigen-

---

[2] Second Employers' Liability Cases, 223 U. S. 49, 50, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Seaboard Air Line v. Tilghman, 237 U. S. 499, 500, 35 Sup. Ct. 653, 59 L. Ed. 1069; Illinois Central R. R. Co. v. Skaggs, 240 U. S. 66, 70, 36 Sup. Ct. 249, 60 L. Ed. 528.

[3] Pedersen v. Railroad, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153.

[4] Balti. & Pot. R. R. Co. v. Mackey, 157 U. S. 72, 87, 15 Sup. Ct. 491, 39 L. Ed. 624; Union Pac. R. R. Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Kreigh v. Westinghouse, 214 U. S. 249, 255, 256, 29 Sup. Ct. 619, 53 L. Ed. 984.

[5] Santa Fé & Pac. R. R. Co. v. Holmes, 202 U. S. 438, 442, 26 Sup. Ct. 676, 50 L. Ed. 1094; Kreigh v. Westinghouse, 214 U. S. 249, 256, 29 Sup. Ct. 619, 53 L. Ed. 984.

[6] Union Pac. R. R. Co. v. O'Brien, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766; Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96.

[7] Union Pacific R. R. Co. v. O'Brien, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766; Choctaw, etc., Ry. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96.

cy reasonably demands in furnishing proper roadbed, track, and other structures. * * * "[8]

The duty arises by implication from the contract of the employer, who agrees that in the place where the employé is to work there is no other danger than is obvious and necessary.[9] The employé has the right to act upon the assumption that proper care has been exercised with respect to the place of work and to suitable appliances for it, and does not assume any negligence in those respects attributable to his employer until he becomes aware of it, or it is so plainly observable that he may be presumed to know of it; and it must appear not only that he had, or is presumed to have had, knowledge, but that he knew his danger and ought to have appreciated it,[10] and consciously assumed it.[11] The employé may assume that proper care has been exercised in establishing a reasonably safe system or method of work, and "Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable not to the method but to negligence in pursuing it."[12] The employé may assume, in the absence of notice to the contrary, that his employer will use reasonable care in furnishing appliances necessary in carrying on the business.[13] The risks inherent in dangerous work, and which the employé assumes, are those which arise after the employer has used reasonable diligence to make the work place reasonably safe.[14] He assumes the danger which inheres in the thing itself "which is a matter of necessity, and cannot be obviated";[15] and the rule of assumption of risk presupposes that the employer has performed the duty of caution, care and vigilance which the law casts upon him.[16]

[7] Hood's duty was, with others, to cut through the fill, including the work under the track over which, to his knowledge, trains passed periodically. He had nothing to do with raising the track or laying the stringers. He had little experience in work of this kind. Assum-

[8] Union Pacific R. R. Co. v. O'Brien, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766.

[9] B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914, 37 L. Ed. 772.

[10] Gila Valley, etc., Ry. Co. v. Hall, 232 U S. 94, 102, 34 Sup. Ct. 229. 58 L. Ed. 521: Railway Co. v. Proffitt, 241 U. S. 462, 468, 36 Sup. Ct. 620, 60 L. Ed. 1102.

[11] Railroad Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; Railroad Co. v. Wright, 207 Fed. 281, 125 C. C. A. 25 (C. C. A. 6); Copper Co. v. Gaddy, 207 Fed. 297, 125 C. C. A. 41 (C. C. A. 6); Paper Co. v. Hamel, 207 Fed. 300, 125 C. C. A. 44 (C. C. A. 6).

[12] C. & O. Ry. Co. v. Proffitt, 241 U. S. 462, 468, 469, 36 Sup. Ct. 620, 60 L. Ed. 1102.

[13] Kreigh v. Westinghouse, 214 U. S. 249, 255, 256, 29 Sup. Ct. 619, 53 L. Ed. 984.

[14] Griffin v Brick Co., 84 Kan. 347, 349, 114 Pac. 217, 40 L. R. A. (N. S.) 1088; La Salle v. Kostka, 190 Ill. 130, 135, 60 N. E. 72; Noyes v. Smith, 28 Vt. *59, *64, 65 Am. Dec. 222.

[15] B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914, 37 L. Ed. 772.

[16] Pantzar v. Iron Min. Co., 99 N. Y. 368, 376, 2 N. E. 24.

ing he had theretofore done much ditch digging, he could not for that reason be presumed to know whether the stringers were laid properly, or whether the shoring actually done was sufficient. His danger lay, not only in the work he was doing and by what he was doing, but was increased by the loosening of the fill caused by trains running over stringers laid as these were, and by the abortive attempt of defendant to shore up as the work proceeded.

The defendant knew the materials of which the fill was composed and the effect of running heavy trains on the track over the stringers laid as these were. It knew the danger to Hood was gradually increasing through its operations as the cut deepened. Reasonable prudence would have suggested steps to hold up the fill, not only for the safe operation of the trains, but also to lessen the danger to Hood. The shoring done indicated an appreciation on the part of defendant that the circumstances called on it for action, and we have no doubt that a reasonably prudent man would have shored up the cut where the need was greatest.

[8] But it is said the danger was obvious, and Hood knew it, or may be presumed to have known it; that the supervisor inspected the work three-quarters of an hour before the accident happened, and that Hood was warned of the danger. The evidence of inspection is meager  There was no inspection of the face of the cut at all. There is some evidence that the men were told to look out for falling dirt, but the warning given was chiefly to get out of the way when trains were passing, lest blocks, brake beams, etc., might fall. The employer's duty requires information to his employé of all perils which should be reasonably known to the employer, and of any change which introduces a new element of danger.[17] The stability of the roadbed was constantly changing by the operations of the defendant and the method by which the operations were carried on.

Knowledge and appreciation by Hood, or adequate inspection and sufficient warning, would have excused the defendant; but these were facts necessarily submitted to the jury, which they could determine one way or the other from the testimony. The determination of these facts were peculiarly within their province,[18] and by their verdict they must have decided them against the defendant. On such matters their verdict is conclusive.[19]

[9] To escape responsibility, defendant invokes the rule, and cites many cases more or less pertinent,[20] that when the employment itself

[17] McCalman v. Railroad Co., 215 Fed. 465, 469, 132 C. C. A. 15 (C. C. A. 6).

[18] Railroad Co. v. Ponn, 191 Fed. 682, 690, 112 C. C. A. 228 (C. C. A. 6) ; Coan v. Marlborough, 164 Mass. 206, 41 N. E. 238; Laporte v. Cook, 21 R. I. 158, 42 Atl. 519.

[19] Sterling Paper Co. v. Hamel, 207 Fed. 300, 303, 125 C. C. A. 44 (C. C. A. 6) ; National Fire Proofing Co. v. Andrews, 158 Fed. 294, 296, 85 C. C. A. 526 (C. C. A. 6).

[20] Railway Co. v. Jackson, 65 Fed. 48, 12 C. C. A. 507; Finlayson v. Mining Co., 67 Fed. 507; Railway Co. v. Brown, 73 Fed. 971, 20 C. C. A. 147; Hauss v. Lake Erie & W. R. Co., 105 Fed. 733, 46 C. C. A. 94; Fortin v. Manville Co. (C. C.) 128 Fed. 642; Omaha Packing Co. v. Sanduski, 155 Fed. 897, 84 C. C. A. 89, 19 L. R. A. (N. S.) 355; Dasher v. Mining Co., 212 Fed. 628, 129

is to make a dangerous place safe, or when, as is claimed here, the place is constantly changing because of the work the employé is employed to do and is doing, and he is by it making his own place in which to work, the employer is relieved from his otherwise duty of furnishing the safe place. This rule, called an exception to the general rule, has been stated by Judge Knappen, speaking for this court, and the reason for it given:

"That it would be impracticable, if not impossible, for a master in such case to look out for the safety of the employé while operations of the nature stated are being carried on." [21]

The exception has no application to the facts in this case, and the many cases dealing with the exception are easily distinguished from this. They need no discussion, because, for one reason at least, this accident did not happen because of any change made by Hood himself by the work he was doing when injured. But, aside from that, and assuming that the fall was partly caused by what Hood was doing at the time, yet it was also caused by what the defendant was doing and failed to do while co-operating in the entire enterprise of passing trains over the cut while the excavation was going on—in introducing new elements of danger not obvious to Hood or known to him, while known to the defendant, and of negligently performing that part of the entire work involved in the system adopted of running trains over the cut while it was being made. The safety of this work depended, not only upon the due performance of it by Hood and his fellows,[22] but also upon the work defendant was doing and the way it was being done. In cases in which the negligence of the employer in failing to provide and maintain a safe place contributes to the injury to the employé, the employer is liable, even when fellow employés are concurrently negligent.[23] The Supreme Court have said that, if the negligence of the company "contributed to, that is to say, had a share in producing, the injury, the company was liable." [24]

The act itself [25] gives a right of action for death "resulting in whole or in part from the negligence of the * * * agents" of the carrier, "or by reason of any defect or insufficiency, due to its negligence, in its * * * appliances, * * * track, roadbed, * * * or other equipment."

C. C. A. 164 (C. C. A. 6); Brown v. Railway Co., 101 Tenn. 252, 47 S. W. 415, 70 Am. St. Rep. 666; Heald v. Wallace, 109 Tenn. 346, 71 S. W. 80; Strepanski v. Grand Rapids Plaster Co, 162 Mich. 696, 127 N. W. 706; Citrone v. O'Rourke, etc., Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; 1 Bailey on Personal Injuries, §§ 80, 81.

[21] Dasher v. Hocking Mining Co., 212 Fed. 628, 632, 129 C. C. A. 164 (C. C. A. 6).

[22] Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440.

[23] Deserant v. Railroad Co., 178 U. S. 409, 420, 20 Sup. Ct. 967, 44 L. Ed. 1127; Kreigh v. Westinghouse, 214 U. S. 249, 257, 29 Sup. Ct. 619, 53 L. Ed. 984.

[24] Grand Trunk Ry. Co. v. Cummings, 106 U. S. 700, 702, 1 Sup. Ct. 493, 27 L. Ed. 266.

[25] 35 Stat. at L. 65, 66, § 2.

The discussion need not be carried further. It is plain enough that the trial court was right in saying that this was not the ordinary ditch case, in which the employé makes his own place to work as he excavates,[26] and correctly charged the jury that there was a duty on the defendant to use ordinary care in protecting its employés.

The jury having found, on facts amply justifying their conclusion, that the defendant failed to discharge that duty, and the recovery finally awarded not being too large under the applicable facts, the judgment below will be affirmed, at the costs of plaintiff in error.

[26] Ritzema v. Brick Co., 152 Mich. 75, 115 N. W. 705; Hodgson v. Railroad Co., 146 Mich. 627, 109 N. W. 1125.

