## DASHER v. HOCKING MINING CO.

### (Circuit Court of Appeals, Sixth Circuit. April 7, 1914.)

#### No. 2436.

1. MASTER AND SERVANT (§ 118\*)—INJURIES TO SERVANT—SAFE PLACE TO WORK—MINES.

The rule that a master owes to a servant the nondelegable duty to exercise reasonable care to furnish the servant a reasonably safe place to work applies to mining operations.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. § 118.\*]

2. MASTER AND SERVANT (§ 205\*)—SAFE PLACE TO WORK—DUTY TO FURNISH—PRESUMPTION OF PERFORMANCE.

Where a master is bound to exercise reasonable care to furnish his servant a safe place to work, the servant may act on the presumption that the duty has been performed, unless he knows, or by the exercise of reasonable care could have known, of the defect and danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.\*]

3. MASTER AND SERVANT (§§ 103, 107\*)—SAFE PLACE TO WORK—DUTY TO PROVIDE.

A master's general obligation to provide a safe place to work does not apply where the servant is engaged in making, or is by express custom or contract bound to make, the place safe himself; or where he is engaged in "making his own place," and where the character of the work is such that the condition of the place as respects safety necessarily changes as the work progresses and by reason of such work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 175, 199–202, 212, 254, 255; Dec. Dig. §§ 103, 107.\*]

4. MASTER AND SERVANT (§ 107\*)—DANGEROUS PLACE—DUTY OF MASTER.

Whenever the place where a servant's work is being done ceases to be one which the employé makes for himself, as an incident to his work, and the work does not necessarily change the character of the place as respects safety, the obligation of reasonable care to keep the place safe rests primarily on the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.\*]

5. MASTER AND SERVANT (§§ 286, 289\*)—INJURIES TO SERVANT—MINING—SAFE PLACE TO WORK.

Where plaintiff, an electrical wire hanger and general repair man, was requested by his foreman to go inside the mine and assist in taking out certain bottom coal, and while so engaged was injured by the fall of a pot of slate from the roof of the room where he was engaged, whether the working place was under plaintiff's control so as to impose on him the duty to prop the roof as required by Rev. St. Ohio 1908, § 6871, whether defendant was negligent in failing to provide plaintiff with a safe place to work, and whether plaintiff was guilty of contributory negligence were for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 289.\*]

In Error to the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by John J. Dasher against the Hocking Mining Company. Judgment for defendant, and plaintiff brings error. Reversed, and new trial ordered.

T. E. Powell, of Columbus, Ohio, for plaintiff in error.

E. J. Jones and Grosvenor, Jones & Worstell, all of Athens, Ohio, for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. Plaintiff brought suit to recover for injuries suffered by him while engaged with another workman in taking out "bottom" coal in an entry of defendant's mine, the injury being caused by the fall from the roof of a "pot" of slate or soapstone weighing several hundred pounds. The defendant was alleged to be negligent in failing to prop up or support the roof of the mine in any way.

Section 6871 of the Revised Statutes of Ohio, then in force, provided that:

· "Any miner or other person, employed in any mine governed by the statute, who intentionally and willfully neglects or refuses to securely prop the roof of any working place under his control, * * * for fifteen feet back from the face of his working place, * * * shall be fined not less than fifty dollars, or imprisoned in the county jail not more than thirty days, or both. The owner, agent, or operator of every coal mine shall keep a supply of timber constantly on hand, and shall deliver the same to the working place of the miner, and no miner shall be held responsible for accidents which may occur in mines where the provisions of this section have not been complied with by the owner, agent, or operator thereof."

The Supreme Court of Ohio has held that the statutory policy established by section 6871 and related sections imposes the duty to prop the roof of a "room" upon the miner in control thereof; that this duty cannot be shifted to another; and that failure to observe the duty defeats recovery (Coal & Mining Co. v. Administrator of Clay, 51 Ohio St. 542, 555, 38 N. E. 610, 25 L. R. A. 848; Coal Co. v. Donley, 73 Ohio St. 298, 302, 76 N. E. 945); and that, if two miners are equally "in control," the fact that one is distinguished as "timberman" does not relieve the other of liability (Coal, etc., Co. v. Administrator of Clay, supra, 51 Ohio St. at pages 542, 556, 38 N. E. 610, 25 L. R. A. 848). The state Supreme Court has, however, held that the statute does not apply to "entries"; that, notwithstanding the statute, it is the duty of the owner or the operator to furnish reasonably safe entries for ingress and egress of employés; and that the miners may presume that this duty has been performed (Wellston Coal Co. v. Smith, 65 Ohio St. 70, 82, 61 N. E. 143, 55 L. R. A. 99, 87 Am. St. Rep. 547; Davis v. Turner, 69 Ohio St. 102, 119, 68 N. E. 819).

At the conclusion of the testimony, the District Court held that, as matter of law, the place where plaintiff was at work was not an "entry," but was a "room"; that the room was under plaintiff's control, within the meaning of the statute; that the place of the accident was within 15 feet from the face of the coal; that it was accordingly the plaintiff's duty to prop the roof, and he having thus disobeyed the

statute could not recover. It was also held that even if the statute did not apply, and the case were to be governed by the common law, the plaintiff was shown by the record to be guilty of contributory negligence, as matter of law. Verdict was accordingly directed and judgment entered for defendant. The correctness of this direction is the important question presented for review. '

Turning first to the relative duties of the parties in the absence of statute: The evidence construed most favorably to plaintiff, as it must be on motion to direct verdict, would sustain findings of fact substantially as follows: In carrying forward the entry the cutting had been done by a machine operated by the company, and the "shooting down," loading, and removal done by the "fillers," whose work (which was done by the ton) had been completed, as respects the extension in question, at least a few days previous to the accident. The machine does not cut quite down to the underlying fire clay; when the thickness of coal left is not more than four inches it is the duty of the fillers to remove it, when the thickness is greater the company has to do it. The "bottom" coal in this case was 12 to 15 inches thick, and had to be removed before the machine could be used in further extending the entry. Plaintiff had been for about a year in defendant's employ, working by the day as electrical wire hanger and general repairman. He had had considerable experience, at intervals extending over a number of years, in various kinds of coal-mining work, although mining seems. not to have been his principal business. He had never done any mining for the defendant company or in the mine in question. On the morning of the accident, the mine foreman (who was overseer of all inside mining operations) met plaintiff near the mouth of the mine, ascertained that he had probably nothing to do that day, and asked how he would like to go with one Andrews to take out bottom coal in the entry in question. Plaintiff assented. The foreman, Andrews, and plaintiff went together into the entry, where the foreman pointed out the coal which he directed to be taken up, suggesting that the best way to get it out was to first cut a trench on each side of the entry through to the fire clay, and then take out the intervening bottom by sledge and wedge. The foreman remained until the work of cutting the trenches was well under way and then left, telling Andrews, "when you get this done, come down to the mouth of this entry," but giving no further instructions to plaintiff. The foreman did not return until after the accident. After plaintiff and Andrews had worked an hour or more, the "pot" fell and struck plaintiff. Andrews' ordinary employment was that of timberman, whose duties are to "take down loose slate if he finds it or timber it up if he finds it needs to be timbered." In the regular process of mining the posting and timbering up is done before the coal is shot down. The entry at the place where the work was being done was not timbered, no suggestion of timbering was made, nor was there testimony of any custom that those taking our bottom coal were to assume the duty of timbering. Plaintiff was permitted to show that when bottom coal is being taken out more than 15 or 16 feet back from where mining had been going on the overseer should test the

roof, and in case of danger timber it up; but, under the view of the statute taken by the court, was not allowed to make a showing on this subject as to the 15 feet immediately back of the mining face. Plaintiff testified that the foreman made no test of the roof and said nothing on the subject; that plaintiff was depending upon the foreman to tell him if there was danger; that plaintiff had no knowledge that the roof was not safe. Andrews testified that, so far as he saw no examination of the roof was made by the foreman; that it looked to him (Andrews) to be safe; and that he made no test except by looking at it, and "never thought to make an examination." The foreman testified that he examined the roof with his eye and with his hand; that it sounded solid; that its appearance was smooth and nothing unusual that he could detect. The principal, if not the only, light available was naturally that afforded by the "bank" or cap lamps. There was testimony, on the one side, that taking out the bottom coal would not have, and on the other side that it might have, a tendency to loosen the pot, which, however, it seems to have been agreed, would fall anyway whenever air got in around it; but it was not disputed that the work of taking out the bottom would have no tendency to cause slate to fall that otherwise would be safe. There was testimony that the existence of a pot could not always be discovered by inspection or sounding. There was, however, testimony to the contrary; and the miner who operated the machine which cut the coal in the place in question testified that when he did his work the roof appeared seamy and inclined to be "potty" at the place of the accident, that it was cracked and he thought it unsafe; and, further, that there was indication that the machine had cut through a claybank, and that the top is always bad and more or less dangerous on either side of such a bank.

[1] Considering the case with reference alone to common-law duties, we think it clear that the court would not have been justified in directing verdict for defendant. No general rule is better established than that the employer owes to the employé the nondelegable duty to exercise reasonable care to furnish the employé a reasonably safe place to work. This rule applies to mining operations, as illustrated by several decisions of this court. Big Brushy Coal, etc., Co. v. Williams, 176 Fed. 529, 99 C. C. A. 102; Tennessee Copper Co. v. Gaddy, 207 Fed. 297, 125 C. C. A. 41; Big Hill Coal Co. v. Clutts, 208 Fed. 524, 125 C. C. A. 526. Indeed, the peculiarly dangerous conditions under which mining operations are carried on make the duty of providing a safe place to work unusually pertinent, for, the more hazardous the employment, the greater should be the care. Schlacker v. Mining Co., 89 Mich. 253, 262, 50 N. W. 839.

[2] Where there exists this obligation on the part of the employer, the employé may properly act upon the presumption that the duty has been performed, and is not guilty of contributory negligence in so doing unless he knows, or by the exercise of reasonable care and prudence should have known, of the defect and danger. Choctaw, O. & G. Ry. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Union Pacific R. Co. v. Jarvi (C. C. A. 8) 53 Fed. 65, 69, 3 C. C.

A. 433; United States Smelting Co. v. Parry (C. C. A. 8) 166 Fed. 407, 410, 92 C. C. A. 159.

[3] This general obligation resting upon the master with respect to providing a safe place to work has, however, no application to cases where (a) the employé is engaged in. making, or it is by express custom or contract his duty to make, the place safe; or (b) where the employé is engaged in "making his own place," and where the character of the work is such that the condition of the place as respects safety necessarily changes as the work progresses, and by reason of such work. The reason of this latter exception is that it would be impracticable, if not impossible, for a master in such case to look out for the safety of the employé while operations of the nature stated are being carried on. Coal, etc., Co. v. Adm'r of Clay, supra, 51 Ohio St. at pages 557, 558, 38 N. E. 610, 25 L. R. A. 848; Petaja v. Aurora Iron Mining Co., 106 Mich. 463, 468, 470, 471, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505; Strepanski v. Grand Rapids Plaster Co., 162 Mich. 696, 127 N. W. 706. This exception has special application to the work of cutting down and blasting coal, where the character of the place is constantly changing, and where therefore the employé may properly be said to be making his own place to work. And it is because of this consideration that, in the absence of statute, the question of liability or nonliability of the employer. has frequently been made to turn upon the question whether the place of the accident was an "entry," used only for passage to and fro, or, on the other hand, a "room" which was being used by the employé. But in the absence of statute, the distinction as applied to the question of relative duty we are considering is not alone between an entry used merely as a passageway, and a room as being a place where work of any kind is being done.

[4] Whenever the place where the work is being done ceases to be one which the employé makes for himself, as an incident to his work, and the work being done does not necessarily change the character of the place as respects safety, the obligation of reasonable care to keep the place safe rests primarily upon the employer. Coal, etc., Co. v. Adm'r of Clay, 51 Ohio St. supra, at pages 557, 558, 38 N. E. 610, 25 L. R. A. 848; Western Coal & Min. Co. v. Ingraham (C. C. A. 8th Cir.) 70 Fed. 219, 223, 17 C. C. A. 71; Western Investment Co. v. McFarland (C. C. A. 8th Cir.) 166 Fed. 76, 78, 91 C. C. A. 504; Highland Boy Gold Min. Co. v. Pouch (C. C. A. 8th Cir.) 124 Fed. 148, 151, 61 C. C. A. 40; Ashland Coal, etc., Co. v. Wallace, 101 Ky. 626, 42 S. W. 744, 43 S. W. 207.

In the McFarland Case, supra, the decedent, while shoveling out ore, was killed by the falling of rock and slate from the roof, which seems to have been previously held in place by the accumulated body of ore; the fall resulting from the removal of the support thereby occasioned. It was held that the doctrine of a safe place to work was applicable, for the reason that the decedent "was not employed to do work which necessarily changed the character of the place for safety. The evidence discloses no conscious employment of that kind." There, in fact, the work seems to have changed the character

of the place for safety, but the character of that kind of work did not necessarily have that effect, but in the given case did so only because of the support before in fact given by the body of ore which was being shoveled away. In Highland Boy Gold Min. Co. v. Pouch, supra, the plaintiff, who operated a drilling machine, was injured by falling rock and timbers, by reason of the caving in of the stope in which the machine was about to be operated. The doctrine of a safe place to work was there also held applicable. It is true that the stope which caved in was said by the court to be "in a certain sense a completed chamber, underground, through which men were expected to pass, and in which they were required to work"; but one of the grounds of decision was that "the plaintiff's injuries were not occasioned by any work which he was doing which made the place insecure." The case was distinguished from one which would be presented had plaintiff been injured while drilling and blasting by the fall of the rock in an unfinished part of the stope where he was at work. In Ashland Coal, etc., Co. v. Wallace, supra, the plaintiff, while laying a switch track in an entry, was hurt by falling slate from the roof. He was thus using the entry not as a place of passage, but as a place to work. The rule requiring the employer to exercise reasonable care to provide a safe place to work was held applicable.

[5] In the instant case, whether the work in which plaintiff was engaged contributed at all to the fall of the pot is at best problematical; at the least, it cannot be said, as beyond dispute, that plaintiff's work necessarily made the place unsafe, as tending to cause the fall of the pot; if, indeed, there was sufficient evidence to justify submitting that question to the jury. Moreover, if plaintiff's testimony were believed, there was on his part no conscious employment in work of a class necessarily tending to cause a fall of material from the roof. The question of defendant's negligence was thus for the jury, and so, we think, was the question whether plaintiff was contributorily negligent. Taking into account that the drilling, blasting, and filling had been done, the more or less obscure evidences of the existence of a pot, the right to rely upon the foreman to make reasonable inspection and to take reasonable precautions to prevent injury, and the lack of proof of any contract or custom requiring one doing work of the class in question to look out for his own safety, it was properly a question for the jury whether the plaintiff failed to exercise the care for his own protection which an ordinarily prudent and intelligent workman in the same circumstances would have employed; and this conclusion is not overthrown by the fact that Andrews, while stating that the roof looked to him to be safe and that he never thought of making an examination, added that perhaps it was carelessness on his part. Nor does it follow that, if the overseer was negligent, plaintiff must also have been; for the degree of care required of the employer and employé in particular cases is frequently, if not generally, different, in view of the primary obligation resting upon the employer, and the right of the employé measurably to act upon the presumption that the employer has performed his duty.

Returning then to the statute: Unless the working place in ques-

tion was under plaintiff's "control," the statute obviously has no application. We think the learned judge who presided below erred in holding that, as matter of law, plaintiff was in such control. Conceding that, if plaintiff and Andrews were jointly in control of the place, plaintiff would not be exonerated from the statutory duty by the fact that Andrews was the timberman, we think the question of actual control is, under the statute, primarily one of fact; in other words, we do not construe the statute as meaning that every person employed in a mine for any purpose is in control of the room in which he is employed. We have been cited to no decisions of the Supreme Court of Ohio asserting such doctrine; and in Coal, etc., Co. v. Adm'r of Clay, supra, and in Ohio & P. Coal Co. v. Simpson (affirmed in 86 Ohio St. 310, 99 N. E. 1131), the question of control seems to have been treated as one of fact.

The case of Ashland Coal, etc., Co. v. Wallace, supra, involved a statute of Kentucky, which imposed a fine on "any person employed in any mine governed by this statute, who intentionally or willfully neglects or refuses to securely prop the roof of any working place under his control." The Court of Appeals of Kentucky construed this statute as "specially intended to refer to those persons actually engaged as miners, in taking out coal, and thereby removing the natural props of the roof, and that it has no application to persons who are specially employed, as was the plaintiff in this case, to perform duties which had no connection in any way with the weakening or removal of these natural supports." We do not decide whether the distinctively criminal Ohio statute should be similarly construed, as plaintiff in error has not raised the question. As the case must be tried again, we content ourselves with saying that taking into account the nature of plaintiff's usual employment at the mine, the circumstances under which he was assigned to this particular work, the extent to which the room had already been completed, the specific directions given by the foreman, and the latter's connection with the work, the defense that plaintiff was in control of the room in the statutory sense presented, at the most, a question of fact for the jury.

In view of these conclusions, we find it unnecessary to discuss the other questions which have been argued.

The judgment of the District Court is reversed, with costs, and a new trial ordered.