## Hazard Coal Company v. Wallace.

(Decided October 18, 1918.)

### Appeal from Perry Circuit Court.

1. Master and Servant—Assumption of Risk.—A servant assumes the ordinary risks of his employment, and where he creates the danger in the progress of his work he must take care to protect himself; but he does not assume the risk caused by the failure of the master to furnish him a reasonably safe place in which to work.

2. Master and Servant—Safe Place to Work.—Where a laborer in a mine was removing dirt and rock that had theretofore fallen in the entrance of the mine by reason of a landslide, his work was not of the character that created a danger in its progress, and his suit for damages was controlled by the "safe place of work" rule.

3. Master and Servant—Inspection.—A servant has the right to assume that the master has used ordinary care to make the place of work reasonably safe and the servant is not required to inspect the place before going to work in order to ascertain whether it is safe.

4. Master and Servant—Safe Place to Work—Instructions.—A servant may act under the direct orders, or in the presence of his

master, and recover for a resultant injury, unless the danger was so obvious that an ordinarily prudent person would not have undertaken to obey the order; but where the evidence wholly fails to show that the master directed or ordered the servant to work in a dangerous place, it was error to submit the case to the jury upon that theory; it should have been submitted under the "safe place of work" rule.

BEVERLY R. JOUETT and MORGAN & NUCKOLS for appellant.

W. A. STANFIEL, H. C. FAULKNER, W. E. FAULKNER, JOHN B. EVERSOLE and GEORGE E. SAUFLEY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In January, 1916, a landslide occurred in appellant's mine, causing a large quantity of dirt, mud and rock to fall over its drift mouth or entrance. The appellee, Wallace, was a miner, and he and several other miners had been taken from their work of mining and put to the work of removing this debris. There were two tracks leading through the mine and to the landslide, one known as the "loaded" track, and the other as the "empty" track. The "loaded" track was about four feet higher than the "empty" track. The two tracks were about three or four feet apart, and there was a row of upright posts or props between them, supporting the mine roof. The loaded cars of coal were brought out of the mine over the "loaded" track and the empty cars would be taken back into the mine over the "empty" track. These men had been working several days on the inside of the mine loading the mud and rock into mine cars which were then hauled by other men through the mountain and dumped from the opening of the mine on the other side of the mountain. They had removed most of the obstruction on the "loaded" track; and, on the day of the accident they were at work removing the debris from the "empty" track. They had finished their dinner and were returning to their work in the mine, when a quantity of rock and mud fell from the roof and side of the mine upon Wallace, striking him in the back and neck. Wallace brought this action to recover damages for his injury, and obtained a verdict and judgment for $584.00 The company appeals.

According to Wallace's testimony White, the foreman, said to the men: "Boys, you have rested forty

minutes over-time; I guess you had better go back and go to work:" that all of them started to go into the mine, and all had gotten in except Wallace; and, that as he started in over the muck pile on the "empty" track the mud and rock fell upon him, as heretofore stated. It is not claimed that the foreman gave any other direction. Wallace further testified that the dirt on the "loaded" track was six or eight inches deep, and four or five feet deep on the "empty" track; that in going to work in the pit mouth he had been going over the dirt on the "empty" track; that he did not go in on the "loaded" track because there was a broken timber hanging down over that track and he was afraid to go under it; that the "loaded" track was obstructed by cars placed upon it; and that he and the other men were working to get the dirt out so that timbers could be put across the top of the "empty" track. The company introduced several workmen who testified that the foreman had told the men not to enter the mine over the "empty" track; but Wallace denied that any such order had been given to him or in his presence, and that he entered the mine over the "empty" track for the reasons above recited.

Many errors are assigned for a reversal; but as the case will have to be reversed upon the instructions, we will not consider the others.

Appellant insists that the "safe place of work" rule has no application, and that it was not charged with any duty to warn Wallace of the plain and obvious danger, which it claims, existed here. This theory of the case is based upon the assumption that Wallace was engaged in making a dangerous place safe and that he assumed the risks incident to that work. Smith's Admr. v. North Jellico Coal Co., 131 Ky. 196, 28 L. R. A. (N. S.) 1266. We cannot accept this view, for although a dangerous landslide had occurred, Wallace was engaged in merely removing the dirt that had fallen upon the track. This was not necessarily dangerous work, like the timbering up of a mine roof, or the pulling of "stumps" in a coal mine would be; and, Wallace was not thereby injured. Wallace did not create the peril; on the contrary he was injured by a falling roof upon which he was not working. This brings the case within the "safe place of work" doctrine. Evans Chemical Works v. Ball, 159 Ky. 406.

But the circuit court tried the case, and erroneously, as we think, upon the first theory above suggested and followed Mason, Hanger & Coleman Co. v. Kennison, 134 Ky. 844, in instructing the jury. In that case Kennison, an ordinary laborer in the service of the appellant company, was working in enlarging a railroad tunnel, and he and other workmen had been sent out of the tunnel to escape the effect of an impending blast. After the blast was made the men were given a signal to re-enter the tunnel and remove the debris caused by the blast; and immediately after Kennison had resumed his work a large stone fell upon him from above, severely injuring him.

In the Kennison case the court approved an instruction which imposed upon the company the duty of making an inspection of the tunnel after the blast; and, in the trial of the case at bar the court, in instructing the jury, substantially copied the instructions in Kennison's case. In doing so it gave a fourth instruction, reading as follows:

"Although you may believe from the evidence that the plaintiff, Charley Wallace, knew of the dangerous condition of the place where he claimed to have been injured, yet if you further believe from the evidence that he was, at the time and place, acting under the direct order of and in the presence of either the foreman, George White, or the superintendent, Perry Gorman, his superior servants, the Hazard Coal Company cannot be excused from liability on this ground, unless the danger was so obvious that a person of ordinary prudence, acting under like or similar circumstances, would not have obeyed said order and continued to work thereunder."

The vice of this instruction is found in the fact that it is predicated upon an express order of White or Gorman, directing Wallace to return to work, when there was no proof that either Gorman or White ordered or directed Wallace to work in a dangerous place. There is no proof whatever that Wallace questioned the safety of the place, or that either White or Gorman assured him that it was safe. The only statement made to the men was White's remark that the dinner hour had expired and it was time for the men to resume their work. But this mere calling of time cannot be regarded as an express order directing the employe to continue his work

in a dangerous place, or an assurance to him that it was safe. All the cases holding that a servant may act under the direct orders, or in the presence of his master, and recover for resultant injury unless the danger was so obvious that an ordinarily prudent man would not have undertaken to obey such order, are based upon the idea that a servant may rely upon the order of the master, and his superior knowledge, as an assurance that the place is safe. The servant has the right to assume that the master has used ordinary care to make the place reasonably safe, and the servant is not required to inspect the place before going to work in order to ascertain whether it is safe. If, however, its dangerous character is so obvious that a person of ordinary understanding and judgment, situated as the servant is, could, by the exercise of ordinary care discover the danger in time to prevent the injury, there can be no recovery. Interstate Coal Co. v. Shelton, 160 Ky. 40. This is the rule that should have been applied in this case, there being no evidence that the foreman ordered or directed Wallace to go to work, or gave him any assurance of safety.

So, in presenting the case to the jury under the theory that Wallace was acting under an express order of his superior to work in a dangerous place when there was no proof to support that theory, the circuit court erred. Speaking generally as to the law of this case, it was the duty of the company to use ordinary care to furnish the plaintiff a reasonably safe place to work; and, if the jury should believe from the evidence that the defendant failed to use ordinary care to furnish the plaintiff, at the time and place mentioned in the proof, a reasonably safe place to work, and that by reason of such failure, if failure there was, the plaintiff while at work was injured, while exercising ordinary care for his own safety, the jury should have found for the plaintiff, unless the defective and dangerous condition of the place, if it was dangerous, was so obvious and certain that the plaintiff knew, or by the exercise of ordinary care in the line of his duty should have known of said dangerous condition, if it was dangerous, in which case the finding should be for the defendant. See L. & N. R. R. Co. v. Carter, 112 S. W. 904. For the error indicated the judgment is reversed and the case remanded for a new trial. No other question is decided.