## CONSOLIDATION COAL CO. v. MARCUM.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

### No. 3163.

1. MASTER AND SERVANT ⇐286(19), 289(1)—ACTION FOR INJURY TO SERVANT—QUESTION FOR JURY.

Issues of negligence and contributory negligence, in an action by a coal miner against the employer for personal injury, *held* properly submitted to the jury.

2. MASTER AND SERVANT ⇐146—RULES OF MINING COMPANY—WAIVER.

A rule of a mining company, requiring operators of cutting machines to sound the roof of their working place before beginning work, and to prop it if evidence of weakness is found, may be waived by the company by employing a separate force to prepare safe places for the machines to work.

In Error to the District Court of the United States for the Eastern District of Kentucky.

Action at law by L. A. Marcum against the Consolidation Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed

Ed. C. O'Rear, of Frankfort, Ky., for plaintiff in error.
John W. Woods, of Ashland, Ky., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge. Marcum recovered verdict and judgment against the coal company for personal injuries sustained while operating a coal-cutting machine for the company in one of its mines. Reversal is sought because of refusal to direct a verdict at the close of the testimony. Thus the only question for decision is whether the evidence was sufficient to justify submission of the cause to the jury.

[1] The injury occurred April 15, 1914, at Van Lear, Ky., in room 12 of mine 153, and was caused by the fall of a portion of the roof. The height of the room was between 4½ and 5 feet, and, according to plaintiff's testimony, the room was 22 feet wide and 250 feet long. The testimony substantially shows that the material of the roof was slate, though several witnesses say it was sandstone. The room was opened by mining and removing the coal probably a year prior to the injury, and the roof was meanwhile supported by numerous posts. The effect of this exposure to the air was to weaken the roof.

---

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Under these conditions the company determined to make further removal of coal from one side of the room. Plaintiff and his assistant, who were operating a Sullivan electric-driven short-wall coal-cutting machine in another portion of the mine, were directed by the foreman and assistant foreman of the company to remove the machine to room 12 and to proceed with the cutting of coal. Some delay intervened, because the room had not been placed in suitable condition for such work. The company had in its employ another set of men who under direction of the foreman and assistant foreman were required, for example, to put a room of this kind in proper condition for the cutting of coal by a power-driven machine, and the company through its assistant foreman and the men used for that purpose undertook so to prepare room 12. This involved cleaning the room, removing props, and, if necessary, substituting other means of supporting the roof in order to furnish sufficient space and to make the place reasonably safe for bringing in and operating the coal-cutting machine.

Plaintiff and his assistant, however, were not satisfied that the place had been put in fit condition. The company caused further work to be done in the room; and there is testimony tending to show that its assistant foreman, Carmack, then told plaintiff the room was "in condition to cut," "in good shape," and peremptorily ordered him to do the work or leave the employ of the company. Plaintiff and his assistant then examined the room themselves, including sounding the roof, and became satisfied, though plaintiff testifies that he did not make as careful an examination as he would have made if he "had not had assurance from the (assistant) foreman that it was in a safe condition and had been fixed"; and relying, as he further in effect testifies, on Carmack's representation and yielding to the peremptory order, plaintiff with his assistant took the machine into the room and began to cut the coal. They continued the work between 20 and 30 minutes, driving the cutter into the coal about 5 feet and along its face from 8 to 12 feet, when plaintiff received his injury.

The pleadings present issues of negligence of the defendant and contributory negligence of the plaintiff, and thus involve the relative duties of the parties. The rule in a case like this is that a primary and nondelegable duty rests upon the employer to exercise reasonable care in furnishing the employé with a reasonably safe place to work. Dasher v. Hocking Mining Co., 212 Fed. 628, 631, 632, 129 C. C. A. 164 (C. C. A. 6). True, as the decision states, there are certain exceptions to the rule; and an exception is here urged under a claim that a custom existed at this mine which imposed the duty on the plaintiff himself to make the place safe, and, further, that the character of the work was such that its progress wrought changes in the condition of the place. The custom so claimed is inconsistent with the company's maintenance of a separate force of men, under direction of its foreman and assistant foreman, to prepare places of the kind in question for the work of coal cutting, and also with what the company actually did through these agencies toward placing room 12 in fit condition for the work. Besides, there is conflict in the testimony as to the existence of such a custom, and also as to causing any material change in the condition of the room either by installing the machine or by the

negligible time of operation and amount of work done prior to the injury. The most then that can be said of the exceptions relied on is that they presented questions of fact.

[2] Reliance, moreover, is placed upon a rule of the company:

"Machine runners and their helpers are instructed to carefully sound the roof of their working place before beginning work, and if any evidence of weakness is found in the roof, extra props must be set on each side of the machine and continued across the face of the room as the machine board is moved."

Marcum did not remember to have read the rule. Whether the rule was known to him or not, it happened that the examination he made of room 12 before bringing in the machine was in practical effect a compliance with the terms of the rule, so far as it can be applicable to this case. Both plaintiff and his assistant, as we have already said, sounded the roof of the room before beginning their work and without finding evidence of weakness. The rule does not require machine runners and helpers to put in place extra props, unless "evidence of weakness is found in the roof." Furthermore, the practice of the company to undertake through other agencies to provide safe places to work would indicate, and such seems to be the effect of the testimony, that it had not enforced nor relied on, but rather had waived the rule. As was said in Eagle Coal Co. v. Patrick, Administrator, 161 Ky. 333, 337, 170 S. W. 960, 962:

"Rules may be abrogated by failure to enforce obedience thereto, or they may be waived by the mine operator departing therefrom in the conduct of the operation."

There is testimony, however, tending to show that before plaintiff entered upon the work the company knew the roof was unsafe. Thus, according to some of the testimony, while the men regularly used for the purpose were engaged in removing props from room 12 and otherwise preparing it for the work of this coal cutting, they discovered several cracks in the roof and near the portion which subsequently fell upon plaintiff; they discussed the advisability of using a "header" or "cross-bar" to support this portion of the roof; apparently the plan would have been adopted if the necessary timber had been at hand; it was 250 feet away and a mule was available for drawing it to the place. A header consists of timber from 4 to 6 inches square and from 10 to 12 feet in length; it is placed across the weak portion of a roof, and an upright post is wedged under each end to sustain it; and thus space is obtained for operating the coal-cutting machine. In denying the motion for new trial, Judge Cochran said of the failure to provide headers:

"It seems to me that the situation called for the roof being supported by headers, and that it was gross carelessness not to so support it."

The charge of the court was clear and comprehensive; this is true also of the opinion rendered in denying the motion; and while we recognize the force of the learned counsel's argument for reversal, we cannot think the conclusion reached below can rightfully be disturbed.

Judgment affirmed, with costs.