## KENMONT COAL CO. v. PATTON.

(Circuit Court of Appeals, Sixth Circuit. November 10, 1920.)

No. 3381. .

1. **Appeal and error ☞927(7)—Case considered most favorably to appellee on review of denial of directed verdict.**

In reviewing a denial of motion to peremptorily direct verdict for defendant, the case must be considered in its aspect most favorable to plaintiff.

2. **Master and servant ☞286(19)—Mine operator's negligence in providing working place question of fact.**

In action for death of coal miner by falling slate, *held*, that it could not be said, as a matter of law, that the portion of the "breakthrough" between one entry and another, in which decedent was when the slate fell, was not part of the working place provided for decedent.

3. **Master and servant ☞107(2)—Duty to furnish safe place not confined to precise spot.**

A coal-mining company's duty with respect to furnishing an employé a safe place to work *held* not necessarily confined to the precise spot in which he was to work.

4. **Master and servant ☞103(1)—Duty to furnish safe place nondelegable.**

A master owes a servant the nondelegable duty of reasonable care to furnish him a reasonably safe place to work.

5. **Master and servant ☞231(1)—Servant may presume performance of master's duty.**

A coal company's employee, assisting in breaking up slate and removing it, could properly act on the presumption that the company's duty as to furnishing a safe place to work had been performed, unless he knew or by the exercise of care should have known of defect and danger.

6. **Master and servant ☞107(5)—Mine owner's duty to make working place safe stated.**

The common-law rule, which relieves a mine owner from the obligation to provide his employee a safe place to work, and throws upon the latter the responsibility of looking out for his own safety, where he is engaged in "making his own place," and where the character of the work is such that the condition of the place as respects safety necessarily changes as the work progresses and by reason of such work, has no application where the work in which the employee is engaged does not necessarily change the character of the place as respects safety.

7. **Master and servant ☞243(13)—Nonobservance of mine owner's rules no defense in view of statute.**

In view of Ky. St. § 2726, subd. 4, requiring the mine foreman to see that the working is safe, rules casting on employees the duty of examining tools, equipment, etc., cannot be invoked by the employer to support its contention that it was the duty of deceased, killed by falling slate, to examine carefully "for dangerous top," where it had notice that the place to which it had sent him not as trackman, or to carry on mining operations therein, but to remove fallen slate, was apparently dangerous.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by Charles Patton, administrator of Kinney Patton, deceased, against the Kenmont Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

B. R. Jouett, of Winchester, Ky. (Miller & Craft, of Hazard, Ky., on the brief), for plaintiff in error.

Bailey P. Wootton, of Hazard, Ky. (R. C. Musick, of Jackson, Ky., and Wootton, Reeves & Wooton, of Hazard, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error, as plaintiff, recovered verdict and judgment against plaintiff in error for damages on account of the death of decedent, caused by the falling of a large block of slate from the roof of defendant's Kentucky coal mine, in which decedent was employed. The substantial questions presented relate, first, to the trial court's refusal to direct verdict for defendant, and, second, to its failure to give a certain request to charge.

[1-6] 1. There was no error in overruling the motion to direct verdict for defendant. It appeared that on the afternoon before the injury a miner named Logan, who was working in the so-called Logan entry, called the attention of the assistant mine foreman to the condition of the slate in the roof of that entry and of the "breakthrough" between the Logan and another entry. Some slate had previously fallen, and a "horseback" of slate in the roof of the breakthrough and "feathering off" into the entry "looked wrong." Logan told the assistant foreman he would feel safer if the roof of both the breakthrough and the entry at the place in question were propped up. The assistant foreman, after inspecting the roof, promised to have it propped up right away. This was not done. Before work began the next morning a large block of slate fell from the roof in the lower part of the entry. The foreman directed Logan to break up the slate and remove it, and directed decedent, who was a trackman working in another part of the mine, to assist Logan in so doing. The rock, when broken up, was to be put in the breakthrough. While on this assignment, and when just outside the narrow entry, and inferably just within the "breakthrough," the "horseback" fell upon and killed decedent. Defendant denies that it was negligent in not making the roof safe, and asserts that it was decedent's duty, and not that of defendant, to see that the breakthrough was safe before entering; also that decedent was guilty of contributory negligence in failing so to do, and likewise assumed the risk of falling slate. These defenses are largely based upon the proposition that the breakthrough was not decedent's "place of work."

Considering, however, the case in its aspect most favorable to plaintiff, as we must in reviewing a denial of a motion to peremptorily direct verdict for defendant, it cannot be said, as matter of law, that the portion of the breakthrough in which decedent was when the slate fell

was not part of the working place provided for decedent. The entry was only a few feet wide. It extended longitudinally only about six feet below the lower limit of the breakthrough. The fallen rock lay on the entry floor, just below the lower line of the breakthrough and close upon its entrance. Decedent had attempted to break up the slate with a hammer, but said he could not break it. Logan said he believed he could, took the hammer out of decedent's hand, took the wedge, raised a "powerful heavy hammer" to drive it, when the horseback fell and crushed decedent. It was fairly open to inference by the jury from the evidence and existing situation that decedent had reasonably and naturally, in the exercise of due care, stepped within the confines of the breakthrough but a short distance, perhaps only a couple of feet or so, to avoid being hit by flying pieces of slate, or possibly by Logan's hammer, or perhaps otherwise in the course of his duty. Defendant's duty with respect to furnishing decedent a safe place to work was not necessarily confined to the precise spot in which decedent was to work. Fluehart Co. v. Elam, 151 Ky. 47, 52, 151 S. W. 34.

In view of these possible inferences, defendant was not entitled to a directed verdict. Under the common law, as administered by both federal and state courts, defendant owed decedent the nondelegable duty of reasonable care to furnish him a reasonably safe place to work. Dasher v. Hocking Mining Co. (C. C. A. 6) 212 Fed. 628, 631, 129 C. C. A. 164, and cases cited. The evidence amply supported a conclusion of defendant's negligence. Defendant being so bound, decedent could properly act on the presumption that the duty had been performed, unless he knew, or by the exercise of care should have known, of the defect and danger. Dasher v. Hocking Mining Co., supra, 212 Fed. at page 631, 129 C. C. A. at page 167, and cases cited; Hazard Coal Co. v. Wallace, 181 Ky. 636, 638, 205 S. W. 692; Mason, etc., Co. v. Kennison, 134 Ky. 844, 850, 121 S. W. 999. The testimony is not such as to show contributory negligence or an assumption by decedent of the risk, as matter of law. The common-law rule, which relieves a mine owner from the obligation to provide his employee a safe place to work, and throws upon the latter the responsibility of looking out for his own safety, where he is engaged in "making his own place," and where the character of the work is such that the condition of the place as respects safety necessarily changes as the work progresses and by reason of such work, has no application where the work in which the employee is engaged does not necessarily change the character of the place as respects safety. Dasher v. Hocking Mining Co., supra, 212 Fed. at page 632, 129 C. C. A. at page 168, and cases cited; Hazard Coal Co. v. Wallace, supra, 181 Ky. at page 638, 205 S. W. at page 693; Evans Co. v. Ball, 159 Ky. 399, 406, 407, 167 S. W. 390.

The Kentucky statutes have not relaxed these rules as applied to the instant case. Subdivision 4 of section 2726 of the Kentucky Statutes expressly makes it the duty of the mine foreman or his assistant to visit and examine every working place in the mine not less than twice each week while the mine is in operation, to direct and see that every working place is properly secured by props or timber, and that no per-

son is directed to work in an unsafe place unless for the purpose of making it safe. He is also required to see that the workmen are provided with sufficient props and timbers, suitably cut, and to deliver them to the working place when ordered or selected by the workmen, as specified in the mine rules and in another subdivision of the same statute.

The questions of defendant's negligence, as well as of decedent's contributory negligence and assumption of risk, were at least for the jury's consideration. That is to say, neither question can, as matter of law, be answered in defendant's favor.

The fact that the jury was instructed that, as matter of law the place within the breakthrough where the accident occurred was part of decedent's place to work, cannot help defendant; for no exception was taken to the charge of the court in that respect, and the failure to except was not the result of inadvertence.

[7] 2. The request to charge whose refusal is complained of would, if given, amount to a peremptory instruction that defendant would not be liable if its rules numbered 2, 7, 15, and 17 were in effect, and if decedent failed, upon entering the place where he was injured, to carefully examine it "for dangerous top," or if he failed from time to time during the progress of the work to examine his working place, or the top of it, to see that it was not becoming unsafe, and if, but for decedent's failure in either of these respects, he would not have been injured.

This instruction was properly refused. Rule 2 has no apparent pertinency to the situation presented. The same is true as to No. 15, which relates to the duties of trackmen. Decedent was not acting as a trackman in doing the work in question. He was called from his duties in another part of the mine to do labor of an entirely different character. Rule 7 also has no pertinency, for it relates to the duty of workmen to take down all loose or dangerous slate, or to otherwise make the roof safe by properly timbering it "before commencing to mine or load coal." Decedent was not engaged in that occupation. Rule 17 declares it the duty of all employees to use the utmost care to avoid injuries to themselves and others, and to see that all tools, machinery, appliances, and equipment with which they have to deal in the performance of their duties are kept in safe condition or repair, and in case they discover any of them to be out of repair or in unsafe repair, they should render them safe, and if unable to do so report the defect to the mine foreman or his assistant. Obviously, this rule has no pertinency to the instant case, except so far as it may relate to the propping up of the roof. It is plain that the instruction asked for, so far as it related to that subject, was properly rejected, in view of the requirements of subsection 4 of section 2726 of the Kentucky Statutes, to which we have already referred. Defendant being charged with the statutory duty referred to, having notice that the place to which decedent was sent was apparently dangerous, and having sent him there upon a special mission, not as a trackman or to carry on mining operations therein, but merely to perform that special mission, cannot, by means of the rule in question, evade its responsi-

bility to exercise care for decedent's safety by throwing upon him the duty of protecting himself against its own negligence.

The judgment should be affirmed.